**Raymond LANG and Rosemary Lang, Appellants,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Respondents.**

No. 72735.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 5, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 8, 1998.

William R. Hirsch, Mark D. Hirschfeld, Clayton, for appellants.

**830**

Russell F. Watters, T. Michael Ward, St. Louis, for respondents.

AHRENS, Presiding Judge.

Raymond and Rosemary Lang ("the Langs"), appeal from the trial court's grant of summary judgment in favor of Nationwide Mutual Fire Insurance Company ("Nationwide"). The Langs contend the trial court erred in denying their claims for underinsured motorist benefits for the death of their son, Martin Lang, under a policy issued to the Langs by Nationwide. The trial court ruled that Nationwide owed the Langs no obligation under Endorsement 2355, which affords the Langs no more than $100,000 in underinsured motorist coverage and prohibits stacking the underinsured motorist coverage on each of the covered vehicles. We affirm.

The facts are undisputed. Martin Lang sustained fatal injuries as a result of an automobile collision involving tortfeasors Brian McKee and Earl Christine. Martin Lang was standing on a street corner in the City of St. Louis, when McKee's and Christine's vehicles collided nearby. McKee's automobile spun out of control and struck Martin Lang. The parties stipulated that the joint and concurrent negligence of McKee and Christine caused the death of Martin Lang. McKee had automobile liability insurance coverage in the amount of $100,000. Christine possessed automobile liability insurance coverage in the amount of $50,000.

The Langs owned three motor vehicles, each insured by Nationwide. The policy provided underinsured motorist coverage and uninsured motorist coverage in the amount of $100,000 per person and $300,000 per occurrence. The Langs paid separate premiums for underinsured motorist coverage for each of their three vehicles in accordance with the policy declaration page.

The Langs filed a petition for damages for the wrongful death of their adult son, including claims against tortfeasors McKee and Christine, and against Nationwide under the underinsured motorist coverage provisions. The Langs settled with McKee and Christine for payment of the tortfeasors' policy limits, totaling $150,000.

Nationwide filed a motion for summary judgment, asserting that based upon the undisputed facts and the subject insurance policy, there could be no available recovery under the underinsured motorist coverage provisions. The trial court sustained Nationwide's motion for summary judgment. The Langs appealed.

On appeal, this Court reviews the entire record in the light most favorable to the Langs, the parties against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is frequently used in the context of insurance coverage questions. The interpretation of an insurance contract is a question of law. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo.App. 1990). Summary judgment is particularly appropriate if the issue to be resolved is construction of a contract that is unambiguous on its face. *Daniels Express and Transfer Co. v. GMI Corp.*, 897 S.W.2d 90, 91–92 (Mo.App.1995).

The language used in an insurance contract must be given its plain meaning. *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). An insurance policy is ambiguous where there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992). Absent an ambiguity, an insurance policy must be enforced according to its terms. *Robin*, 637 S.W.2d at 698. A court may not use its inventive powers to create an ambiguity where none exists or rewrite a policy to provide coverage for which the parties never contracted, absent a statute or public policy requiring coverage. *Rodriguez v. General Acc. Ins. Co. of America*, 808 S.W.2d 379, 382 (Mo. banc 1991). The fact that the parties disagree over the interpretation of a term in an insurance policy does not render the term ambiguous. *Sanders v. Wallace*, 884 S.W.2d 300, 302 (Mo.App.1994).

The subject policy contains a per person limit for underinsured motorist coverage in the amount of $100,000, as stated in the

policy declarations. The "Limits of Payment" section in Endorsement 2355 to Lang's policy sets out the amounts payable for underinsured motorist losses in relevant part as follows:

LIMITS OF PAYMENT

We agree to pay losses up to the amounts stated in the Declarations. The following applies to these limits:

1. The bodily injury limit shown for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to **bodily injury** to one person as a result of one occurrence.

The per-person limit is the total amount available when one person sustains **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims made by anyone arising out of **bodily injury**, including death, to one person as a result of one occurrence. (emphasis in original).

Subject to this per-person limit, the total limit of **our** liability shown for each occurrence is the total amount available when two or more persons sustain **bodily injury**, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims or any other claims arising out of **bodily injury**, including death, to two or more persons as a result of one occurrence.

2. Coverage applies as stated in the Declarations. The insuring of more than one person or vehicle under this policy does not increase **our** Underinsured Motorists payment limits. In no event will **any insured** be entitled to more than the highest limit applicable under any policy issued by **us**.

3. The limits or damages payable under this coverage, whichever are less, shall be reduced by:

(a) any amount paid by or for any liable parties, including amounts paid or payable under the Bodily Injury Liability coverage of this policy.

* * *

The Nationwide underinsured motorist policy also contained the following "other insurance" clause which provided, in relevant part:

OTHER INSURANCE

If there is other insurance:

1. For **bodily injury** suffered by **an insured** while **occupying** a motor **vehicle you** do not own, **we** will pay the insurance loss not covered by other insurance. However, this insurance will apply only in the amount by which the limited liability for this coverage exceeds the applicable limit of liability of the other insurance.

2. Except as stated above, if there is other insurance similar to this coverage under any other policy, **we** will be liable for only **our** share of the loss. **Our** share is **our** proportion of the total insurance limits for the loss.

3. In any event, if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them.

Nationwide contends it owed no obligation to pay underinsured motorist benefits to the Langs under Endorsement 2355 because the sums paid in the amount of $150,000 by the tortfeasors for the bodily injuries to a single person (Martin Lang) which arose out of a single occurrence (the automobile collision) exceeded the $100,000 per person limit of underinsured motorist coverage under the policy. The Langs disagree, contesting this analysis with four arguments.

■ The Langs first contend a conflict between the "Other Insurance" provisions and the "setoff" clause in paragraph three of the "Limits of Payment" section creates an ambiguity, that should be construed to favor coverage under the formula provided in the "Other Insurance" provisions. Specifically, paragraph two of the "Other Insurance" provisions reads, "[e]xcept as stated above, if there is other insurance similar to this coverage under any other policy, we will be liable for only our share of the loss. Our share is our proportion of the total insurance limits for the loss." The Langs argue that paragraph two is applicable in the instant case

because the tortfeasors had other insurance. The Langs rely primarily on *Zemelman v. Equity Mut. Ins. Co.*, 935 S.W.2d 673 (Mo. App.1996). If applicable, the Langs argue the only reference to policy limits in the "Other Insurance" provisions states, "if more than one policy applies, total limits applicable will be considered not to exceed the highest limits amount of any one of them." Therefore, the Langs claim they are entitled to actual damages arising from the loss. We disagree.

The instant case is distinguishable from *Zemelman*. The *Zemelman* policy described the underinsured motorist coverage as "**excess** over any other collectible insurance." *Zemelman*, 935 S.W.2d at 675 (emphasis added). The applicable portion of Endorsement 2355 does not contain similar language. The Western District found in *Zemelman* that the policy's other insurance provisions could "reasonably be interpreted to provide underinsured coverage as excess to amounts recovered from the tort-feasor." *Id.* at 677. The applicable portion of Endorsement 2355 does not mention "excess over any collectible insurance." Instead, Endorsement 2355 limits its underinsured motorist coverage to a relative "proportion" of the available limits compared with "other insurance similar to this coverage" and restricts its underinsured motorist coverage from exceeding the highest limits contained in any other policy. We find no ambiguity in or conflict between the "other insurance" provision and the "setoff clause" in this case.

■ In addition, paragraph two of the "Other Insurance" provisions does not apply to the Langs' situation. The critical language of paragraph two requires the "other insurance [be] similar to this coverage under any other policy." The plain and unambiguous terms refer to other underinsured motorist coverage, not any form of insurance, as the Langs contend. The reference to other underinsured motorist coverage is accentuated by the absence of the word "similar" in paragraph one of the "Other Insurance" provisions, applicable in instances when an insured suffers bodily injury while occupying a motor vehicle the insured does not own.

The "Limits of Payment" section sets forth the maximum amount Nationwide will pay in plain, unequivocal terms. The "Other Insurance" provisions, found within the "Limits of Payment" section of Endorsement 2355, may lower the maximum amount Nationwide will pay on an underinsured motorist claim, but will not increase the maximum amount set out in the declaration sheet. A reading of the two sections together does not render the policy ambiguous. *See Otto v. State Farm Mut. Auto. Ins. Co.*, 964 S.W.2d 472 (E.D. 1998); *State Farm Mut. Auto. Ins. Co. v. Sommers*, 954 S.W.2d 18 (Mo.App.1997).

■ Secondly, the Langs contend the set-off clause in Endorsement 2355 applies to payments received from each underinsured motorist only and not to sums paid on behalf of both underinsured and non-underinsured tortfeasors. Specifically, the Langs argue the setoff clause in paragraph three of the "Limits of Payment" section applies to sums paid on behalf of Mr. Christine, an underinsured motorist, but not Mr. McKee, a non-underinsured motorist. We disagree.

■ The Supreme Court of Missouri stated that underinsured motorist coverage establishes a total amount of protection which assures the insured of receiving coverage for the contracted amount to the extent the tortfeasor's coverage is less than the contracted amount. *Rodriguez*, 808 S.W.2d at 382–83, n. 1. Underinsured motorist coverage is optional coverage. *Id.* at 383. There is no statutory nor public policy requirement in Missouri for underinsured motorist coverage. *Id.* Therefore, the unambiguous contractual terms and conditions of the policy control the benefits to which the Langs are entitled.

■ Endorsement 2355's setoff clause is clear and unambiguous. The setoff clause applies to "**any** amount paid by or for **any** liable parties." (emphasis added). Both McKee and Christine are liable parties. Therefore, the $150,000 collected from both tortfeasors must be deducted from Nationwide's per person limit of $100,000 for underinsured motorist coverage. The Langs are not entitled to underinsured motorist benefits under Endorsement 2355 because the tortfeasors paid in excess of the policy limits.

Proceeds from non-underinsured as well as from underinsured motorists may be used to offset underinsured motorist coverage when the policy is clear and unambiguous. *See Rodriguez*, 808 S.W.2d at 382; *Diehl v. Valley Forge Ins.*, 810 S.W.2d 670, 670–71 (Mo. App.1991). In the instant case, the trial court did not err in finding "Nationwide is not obligated to pay plaintiffs under the [underinsured motorist] coverage."

■ The Langs further contend that both Mr. and Mrs. Lang are entitled to a separate right of recovery for damages under Endorsement 2355, not subject to the per person limit of $100,000. If successful, this argument would raise the Langs combined potential recovery above the $150,000 received from the two tortfeasors and avoid a complete denial of recovery under the setoff clause.

The Langs argue they each suffered "compensatory damages" arising from the death of their son. They further argue the specific language of the policy requires compensation to each policyholder and spouse for a loss under the underinsured motorist clause. The Langs rely on the following policy language in concluding they are entitled to separate recoveries:

1. "POLICYHOLDER" Being the first person named in the Declarations. The policyholder is the named insured under this policy and does not include the policyholder's spouse ...

2. "YOU" and "YOUR" mean or refer to the policyholder as defined, and include the policyholder's spouse if living in the same household.

\* \* \*

We will pay compensatory damages, including derivative claims, which are due by law to **you** ... from the owner of an underinsured motor vehicle because of bodily injury suffered by **you** or a relative. (emphasis added).

The policy language does not create an ambiguity. The "Limits of Payments" section clearly limits the Langs to one claim. As a result of one occurrence, only one person sustained bodily injury, resulting in death. Therefore, the per person limit is the total available amount. The policy specifically provides that "No separate limits are available to anyone with derivative claims, statutory claims or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence."

■ Missouri's Wrongful Death Statute, Section 537.080.2 RSMo 1994, provides that "only one action may be brought under this section against any one defendant for the death of any one person." Moreover, it predicates recovery on liability to the decedent had he or she lived. *Lumley v. Farmers Ins. Co., Inc.*, 716 S.W.2d 455, 457 (Mo. App.1986). Missouri Courts have long held that the Wrongful Death Statute "provides for one indivisible claim for the death of a person which accrues on the date of death." *Id.* (quoting *State ex rel. Kansas City Stock Yards Co. of Maine v. Clark*, 536 S.W.2d 142, 145 (Mo. banc 1976)). There can only be one recovery and one cause of action, regardless of the number of claimants able to join in that recovery. *Lumley*, 716 S.W.2d at 457.

Missouri courts have previously addressed the issue of uninsured motorist coverage and multiple claims arising from the death or injury of a single individual. The Langs concede Missouri courts rejected their individual recovery argument in *Adams v. Allied Fidelity Ins.*, 753 S.W.2d 55 (Mo.App.1988) and *Lumley v. Farmers Ins. Co.*, 716 S.W.2d 455 (Mo.App.1986). The Langs, however, urge this Court to reach a different result when addressing the issue in regards to underinsured motorist coverage. The Langs offer no persuasive reason why the holdings in *Adams* and *Lumley* should not be equally applicable to underinsured motorist coverage. In fact, unlike the analysis involving uninsured motorist coverage, public policy concerns do not weigh in favor of coverage.

The Langs cite *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266 (Mo. banc 1983), as persuasive authority. Like the court in *Lumley*, we find *Cano* distinguishable. *Cano* involved distinct and separately assertable claims. *Lumley*, 716 S.W.2d at 457–58. Moreover, the insurance policy in *Cano* contained an

ambiguity. *Id.* at 458. Section 537.080 RSMo 1994 allows one cause of action. We refuse to create an ambiguity where none otherwise exists. The per person limit is clear and unambiguous even when read in combination with other portions of the policy. Point denied.

Finally, the Langs contend that Nationwide's policy requirement that the underinsured motorist coverage equal the uninsured motorist coverage sufficiently combined the coverages to require stacking of the underinsured motorist coverage of the Langs' three insured vehicles, despite the policy's anti-stacking language. The Langs policy does not sufficiently combine the underinsured and uninsured motorist coverages to require stacking of the underinsured motorist coverage in light of the policy's anti-stacking language.

There is a public policy requirement that uninsured motorist coverage must be stacked when two or more vehicles are insured under a single policy. *Cameron Mutual Ins. Co. v. Madden,* 533 S.W.2d 538 (Mo. banc 1976). There is no public policy requirement requiring stacking of underinsured motorist coverage. *Rodriguez,* 808 S.W.2d at 383. However, if there is a combination or tying together of the uninsured motorist and the underinsured motorist coverage, courts have found an ambiguity as to coverage and required stacking of the underinsured motorist coverage as well as the uninsured motorist coverage. *See, e.g., Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 212 (Mo. banc 1992); *American Economy Ins. v. Cornejo,* 866 S.W.2d 174 (Mo.App.1993); *Tegtmeyer v. Snellen,* 791 S.W.2d 737 (Mo.App.1990).

The Langs decided to purchase underinsured motorist coverage. Their policy required the limits for underinsured motorist coverage equal the limits for uninsured motorist coverage. The Langs contend the two are sufficiently tied to require stacking of the underinsured motorist coverage.

The Nationwide policy has separate and distinct definitions for an uninsured motorist and an underinsured motorist. In fact, the policy specifically states the two definitions are mutually exclusive. Endorsement 2355 expressly declares "an underinsured motor vehicle" is not "an uninsured motor vehicle as defined elsewhere in the policy." Moreover, the underinsured motorist coverage is provided for by a separate endorsement, Endorsement 2355, and is not part of the combined coverage. Similarly, the uninsured motorist definition appears in a separate and distinct endorsement, Endorsement 1528C, accompanying the coverage it represents. Although the underinsured motorist coverage limits are tied to the uninsured motorist coverage limits, the declarations page provides for these limits separately and applies payments to these coverages separately. *Cf. Cornejo,* 866 S.W.2d at 177.

Missouri courts will not find an ambiguity when a motor vehicle liability insurance policy clearly defines the term "underinsured" as separate and apart from the term "uninsured". *Rodriguez,* 808 S.W.2d at 383–84; *Zemelman,* 935 S.W.2d at 676. Nationwide's definitions are separate and apart. The instant case is distinguishable from a case in which the policy does not provide separate and distinct definitions of "underinsured" and "uninsured". *Zemelman,* 935 S.W.2d at 676.

The underinsured motorist coverage and the uninsured motorist coverage are not inseparably intertwined. The Langs and Nationwide were free to define and limit coverage by their agreement. *Noll v. Shelter Ins. Co.,* 774 S.W.2d 147, 151 (Mo. banc 1989); *Geneser v. State Farm Mut. Auto. Ins. Co.,* 787 S.W.2d 288, 290 (Mo.App.1989). The provisions regarding coverage limits restrict the total amount recoverable under the underinsured motorist coverage to the limits set forth in the declarations regardless of the number of vehicles insured or the number of claimants. The policy is unambiguous and prohibits stacking of underinsured policies. Point denied.

The judgment of the trial court is affirmed.

CRANDALL and KAROHL, JJ., concur.