87 F.Supp.2d 904 (1999)
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff,
v.
Derrick WARREN, Defendant.
No. 4:98CV2126SNL.
United States District Court, E.D. Missouri, Eastern Division.
November 29, 1999.
*905 Russell F. Watters, Managing Principle, Brown and James, P.C., St. Louis, MO, for St. Paul Fire and Marine Insurance Company, plaintiff.
Gordon E. Freese, St. Louis, MO, for Derrick Warren, defendant.

MEMORANDUM
LIMBAUGH, Senior District Judge.
Plaintiff St. Paul Fire & Marine Insurance Co. (hereinafter referred to as St. Paul) has filed this declaratory judgment action seeking a determination that no coverage exists for defendant Warren's claim for defense and indemnification under the homeowner's insurance policy issued to defendant by St. Paul. Warren's claim for defense and indemnification arises out of a wrongful death lawsuit filed by Warren's live-in girlfriend Melba Wilkes for the deaths of two of her children who were residing in Warren's residence at the time of their deaths. This matter is before the Court on the parties' cross-motions for summary judgment (# 17 and # 20), filed August 19, 1999 and August 20, 1999 respectively.[1] This cause of action is set for trial on the Court's trial docket of December 13, 1999.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
*906 Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). However, summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of his or her case. Helfter v. United Parcel Services, Inc., 115 F.3d 613, 615 (8th Cir.1997) citing Bialas v. Greyhound Lines, Inc., 59 F.3d 759, 762 (8th Cir.1995).
The matter before the Court involves the construction of an insurance policy, specifically a "household exclusion" clause contained within the policy. The Court's construction of this clause is determinative of coverage for defendant with regard to Ms. Wilke's claim for the wrongful deaths of two of her children. In Missouri, summary judgment is routinely used in the context of insurance coverage questions, especially with regard to issues of ambiguity. Lang v. Nationwide Mutual Fire Ins. Co., 970 S.W.2d 828, 830 (Mo.App.1998).
In 1991 defendant Warren and Ms. Wilkes began a significant personal relationship which continues to this day.[2] When they first met, Ms. Wilkes already had two children, Rhonda and Rhoneshia Butler. Rhonda was approximately fifteen (15) months old and Rhoneshia approximately six (6) months old.[3] By 1993, Ms. Wilkes and Warren had two (2) children together, Derrick and Dericka. Plaintiff's Exhibit B  Deposition of Defendant Warren, pgs. 21, 23.
Prior to 1996 Ms. Wilkes (along with all four children) and defendant resided in separate residences. In 1996, defendant bought a home located at 3647 East Edgar, St. Louis, Missouri 63121. Shortly thereafter, Ms. Wilkes and all four children moved into this residence, along with defendant. Defendant's Exhibit B, pgs. 20-21. In March 1996, defendant obtained a homeowner's policy for this residence from St. Paul. This policy (Policy No. PH XX-XXXXXX) was effective from March 22, 1997 through March 22, 1998. Defendant Warren was the only "named insured" on the policy. Plaintiff's Exhibit A.
The policy provides in the section entitled Definitions that "[i]n this policy, `you' and `your' refer to the `named insured' shown in the Declarations and the spouse if a resident of the same household. `We', `us' and `our' refer to the Company providing *907 this insurance. In addition, certain words and phrases are defined as follows:
2. Bodily injury means bodily harm, sickness or disease, including required care, loss of services, and death that results.
4. Insured means you and residents of your household who are:
a. your relatives; or
b. other persons under the age of 21 and in the care of any person named above."
Plaintiff's Exhibit A.[4]
The policy furthermore in Section II  Liability Coverage provides in pertinent part:
Coverage E  Personal Liability
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which an insured is legally liable ...
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defends ends when the amount we pay or tender for damages resulting from the occurrence equals our limits of liability.
The policy furthermore in Section II  Exclusions provides in pertinent part:
2. Coverage E  Personal Liability, does not apply to:
f. bodily injury to you or any insured within the meaning of part a. or b. of insured as defined.
Rhonda and Rhoneshia shared a bedroom, while Derrick had his own bedroom.[5] Rhonda and Rhoneshia permanently stayed in this residence, except for occasional "sleep-overs" at their grandmother's home. Plaintiff's Exhibit B, pgs. 50-51.
Before Warren and Wilkes began co-habitating, Warren was paying child support for Derrick and Dericka of approximately $400.00 per month. However, after Wilkes and Warren began co-habitating, Warren did not pay any further child support for the care of Derrick and Dericka. After 1996, Wilkes received no child support or AFDC[6], other than food stamps, for all four children. Plaintiff's Exhibit B, pg. 21; Plaintiff's Exhibit C  Deposition of Melba Wilkes, pg. 51.
Warren and Wilkes shared household expenses with Warren paying the rent, Wilkes paying the gas and electric bills, and both of them sharing the remaining utilities' expenses. Wilkes was primarily responsible for the purchase of groceries and clothing for the children. Plaintiff's Exhibit B, pgs. 28, 32-33; Plaintiff's Exhibit C, pgs. 52-55. Warren added Rhonda and Rhoneshia to his employment health insurance plan on October 21, 1996. Plaintiff's Exhibit D. He also identified Rhonda and Rhoneshia as his "stepdaughters" and beneficiaries on his employment life insurance plan. Plaintiff's Exhibit D.
Warren assisted in looking after the children. He loved all four children and tried not to treat Rhonda and Rhoneshia differently because he was not their natural father. Plaintiff's Exhibit B, pgs. 30, 50-51. The children got along well with each other, and with Warren. Rhonda and Rhoneshia called Warren "Big Daddy". Plaintiff's Exhibit B, pg. 52.
On November 27, 1997 the children were left in the home with Wilkes' uncle while Warren and Wilkes were out. A fire broke out killing all four children. Plaintiff's *908 Exhibit B, pgs. 35-40. Rhonda and Derrick were buried in a single grave and Rhoneshia and Dericka in another. The order of burial was based upon the closeness between the children. Plaintiff's Exhibit B, pg. 41.
In May 1998, Wilkes filed a wrongful death lawsuit in state court against Warren for the deaths of Rhonda and Rhoneshia. She alleged that Warren was negligent in telling Wilkes that the stove had been turned off.[7] Plaintiff's Exhibit F. Warren made a claim indemnification and defense which resulted in St. Paul defending Warren under a reservation of rights. Plaintiff's Exhibit G.
In September 1998, Warren gave a recorded statement to St. Paul. Plaintiff's Exhibit E. He stated that he provided housing and financial support for all the children, including Rhonda and Rhoneshia. Plaintiff's Exhibit E, pgs. 4-5, 7. He described his relationship with Rhonda and Rhoneshia as "It was, I mean, it was trust, love, great love. Great trust, it was like, like a father almost." Plaintiff's Exhibit E, pg. 5.
On March 5, 1999 Warren signed a document terminating the representation by the attorneys for St. Paul. Plaintiff's Exhibit G. Said attorneys withdrew their representation. Plaintiff's Exhibit I. On March 22, 1999 Warren and Wilkes entered into a Missouri statutory agreement under § 537.065 R.S.Mo., limiting any recovery under Wilkes' lawsuit to the subject insurance proceeds, and admitting liability. Plaintiff's Exhibit H.
St. Paul has filed this declaratory judgment action asserting that the household exclusion clause contained in the subject insurance policy precludes any claim for the wrongful deaths of Rhonda and Rhoneshia. St. Paul contends that Rhonda and Rhoneshia are "insureds" under the policy and the household exclusion clause does not provide coverage for bodily injury to any insured under the policy. It further contends that claims for wrongful death of an insured are precluded because such claims arise out of or stem from the bodily injury. Defendant contends that since he was not the natural father of nor were Rhonda and Rhoneshia in his "charge and protection", the decedents were then not in "his care" and therefore, they were not "insureds" and the household exclusion clause is inapplicable.
Whether the language in an insurance contract is ambiguous is a question of state law. RLI Insurance Co. v. Drollinger, 97 F.3d 230, 231 (8th Cir.1996). Under Missouri law, insurance policies are contracts and the rules of contract construction apply. Sargent Construction Co. v. State Auto. Ins., 23 F.3d 1324, 1326 (8th Cir .1994); Peters v. Employers Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo.1993); Arbeitman v. Monumental Life Ins., 878 S.W.2d 915, 916 (Mo.App.1994); Herpel v. Farmers Insurance Co., 795 S.W.2d 508, 510 (Mo.App. 1990). In construing an insurance policy, the words in the policy must be given their ordinary or plain meaning. American Family Mutual Ins. Co. v. Van Gerpen, 151 F.3d 886, 887-88 (8th Cir.1998); Interco Inc. v. National Surety Corp., 900 F.2d 1264, 1266 (8th Cir.1990); Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo.1999); Columbia Mutual Ins. Co. v. Schauf, 967 S.W.2d 74, 76 (Mo.1998); Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo.1997). The plain or ordinary meaning is the meaning that the average layperson would understand. Shahan, at 535; Farmland Indus., at 508. To determine the plain, layman's meaning of a word, courts look to standard English language dictionaries. American Family Mut. Ins. Co. at 888; Shahan, at 535; Farmland Indus., at 508.
When the language of an insurance policy is clear and unequivocal, then the parties will be bound by its clear meaning. Courts are not permitted to create ambiguities *909 where none exists or to distort the contractual language so as to rewrite a policy in order to provide coverage which the parties had not intended, absent a statute or public policy requiring coverage. American Family Mutual Ins. Co., at 888; Shahan, at 535; Krombach v. Mayflower Ins. Co., 827 S.W.2d 208, 210 (Mo.1992); Rodriguez v. General Acc. Ins. Co., 808 S.W.2d 379, 382 (Mo.1991); Lang v. Nationwide Mutual Fire Ins., 970 S.W.2d 828, 830 (Mo.App.1998). Thus, absent an ambiguity, an insurance policy must be enforced according to its terms. Sargent Const. Co., at 1326, n. 2 citing Hempen v. State Farm Mutual Automobile Insurance Co., 687 S.W.2d 894 (Mo. banc.1985).
Under Missouri law, "an allegedly ambiguous phrase must be considered in the context of the policy as a whole." Interco Inc., at 1266; see also, Stein v. State Farm Fire & Casualty Co., 120 F.3d 909, 910 (8th Cir.1997); RLI Insurance Co., at 231; Columbia Mutual Ins. Co., at 76. An ambiguity exists in an insurance contract when there is duplicity, indistinctness, or an uncertainty in the meaning of the words used in the contract. RLI Insurance Co., at 231; Sargent Const., at 1326; Interco, Inc., at 1266; Lang, at 830 citing Krombach, at 210. Furthermore, Missouri law provides that an ambiguity exists in an insurance contract when it is fairly susceptible of multiple interpretations. RLI Insurance Co., at 231; Interco, Inc., at 1267. Although words are to be given their ordinary meaning, if a conflict arises between a technical definition within a contract, and the meaning which would reasonably be understood by the average layperson, the layperson's definition will be applied unless it plainly appears that the technical meaning is intended. American Family Mutual Ins. Co., at 888; Sargent Construction Co., at 1327; Rodriguez, at 382; Krombach, 827 S.W.2d. at 210; Greer v. Zurich Insurance Co., 441 S.W.2d 15, 27 (Mo. 1969). Finally, the fact that the parties may disagree on the interpretation of a term or clause in an insurance policy does not create an ambiguity. Lang, at 830.
As a general rule, exceptions and limitations (i.e. exclusion clauses) should be strictly construed against the insurer and ambiguities are to be resolved in favor of the insured. RLI Insurance Co., at 231; Sargent Construction Co., at 1326; Interco, Inc., at 1266; First Southern Ins. Co. v. Jim Lynch Enterprises, Inc., 932 F.2d 717, 719 (8th Cir.1991); Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri, 965 S.W.2d 194, 197 (Mo.App.1998); Southern General, at 782. "In reviewing insurance policies, the policies will be given a reasonable construction and interpreted so as to afford coverage rather than defeat coverage." RLI Insurance Co., at 231 quoting Nixon v. Life Investors Ins. Co., 675 S.W.2d 676, 679 (Mo.App.1984). Unless the insurer meets its burden of proving a policy exclusion effective, such a clause will be held ambiguous and the court will adopt a construction favorable to the insured. Southern General Ins. Co. v. WEB Associates/Electronics, Inc., 879 S.W.2d 780, 782 (Mo.App.1994) citing Omaha Indemnity Co. v. Pall, Inc., 817 S.W.2d 491, 494 (Mo.App.1991).
In the present case, the parties disagree over whether Rhonda and Rhoneshia qualify as "insureds" as that word is defined in the phrase "other persons under the age of 21 and in the care of any person named above." The parties do not quibble over the issue of ambiguity; rather, they disagree on the meaning and application of the phrase "in the care of" as it relates to Warren's relationship with Rhonda and Rhoneshia. Both parties cite to the recent case of American Family Mutual Ins. Co. v. Wemhoff, 972 S.W.2d 402 (Mo.App.1998) in support of their position.
In Wemhoff, supra, a nine-year old child was on a court-ordered (due to a divorce) overnight stay at the insured's home. The insured (the child's father) paid court-ordered child support, but took no responsibility for the child's education or medical care. The child shared a bedroom with her sister at the insured's home, but kept no clothing or personal belongings at the *910 insured's home. Her mother packed clothes, personal hygiene articles, and toys for the child to take with each overnight visit. Id., at 403.
During the visit, the child accompanied the insured to his farm. While at the farm, the child was injured by a horse owned by the insured. The mother soon after filed a lawsuit seeking damages for the alleged negligence of the insured which led to the child's injuries. Id., at 404. The insurer sought declaratory judgment that the named insured's child was insured and that the renter's and farm/ranch insurance policies provided no liability or medical expense coverage for the child's injuries. Id., at 404.
Both policies at issue excluded liability coverage for bodily injury and medical expense occasioned by an injury to an "insured". Consequently, coverage only existed for the child's injuries if she was not an "insured" under the terms of the policies. Id., at 404. Both policies, in pertinent part, defined "insured" as "any other person under the age of 21 in your care or in the care of your resident relatives". Id., at 405. The trial court found that the child was an "insured" because she was a person under the age of 21 and in the insured's "care" at the time of her injuries. Id., at 405.
The Missouri Court of Appeals affirmed the trial court finding that the child was an "insured" because she was a person under the age of 21 and in the "care" of the named insured. The Court determined that the word "care" when interpreted in the overall context of the policies (with respect to the subject child) was not ambiguous. Recognizing that in construing insurance policies, courts are not obligated to apply every possible definition given in a dictionary to the disputed term, it chose to utilize a common definition of "care" particular to the set of facts presented by the case. "While the term `care' is a word of variable meaning, it can `usually be interpreted in the context' of its use. Furthermore, `the policy must be reasonably construed in light of the specific situation with which the parties are dealing.'" Wemhoff, at 405 (citations omitted).
Given the circumstances present in the case, and "recognizing `charge; protection; custody' WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 3rd. ed., pg. 212, as a common definition of `care'", the Court determined that the child was in her father's "care" at the time of the accident and as the term was used in the policies. Id., at 406.
Defendant Warren argues for a literal application of the Wemhoff case; i.e, that the word "care" can only mean "charge, protection, and/or custody". He contends that since the girls' mother was "in charge" of them and they were not living or visiting him under a court order, Rhonda and Rhoneshia were not "under his care". Since they were not in his care, they are not "insureds" and thus, the subject household exclusion clause is inapplicable. The Court finds this argument meritless.
It is clear from the Wemhoff case that the Court's directive was to evaluate the term "care" in the context of its use and to reasonably construe the policy within the specific situation which the parties are dealing. The definition utilized by the Court was one of several definitions which was reasonable given the specific situation which presented itself in the case. There is nothing in the Court's holding which approaches the defendant's very restrictive interpretation. "Care" has "variable meaning" which should be interpreted within the context of its use, given the specific situation which presents itself in a case of insurance contract construction. Under these parameters, the Court finds that Rhonda and Rhoneshia were "in the care of" the defendant at the time of the fire.
As the Wemhoff Court held, the term "care" is defined as "charge; protection; custody" in WEBSTER'S NEW WORLD COLLEGE DICTIONARY, 3rd ed., pg 212. In THE AMERICAN HERITAGE *911 DICTIONARY, 2nd College Edition, pg. 240, the term "care" is defined, among other things, as "protection; supervision; charge". Given these definitions and the specific circumstances of this case, the Court has no difficulty finding that Rhonda and Rhoneshia were "in the care of" defendant Warren. The decedents had lived with the defendant for over a year. He provided permanent housing for them. He provided some financial and emotional support for these children. He listed them on his health insurance plan to provide for their medical needs. He listed them on his life insurance plan to provide for their survival in the event of his death. He had presented himself to them sufficiently as a father figure so as to be called "Big Daddy" by them. The lack of a biological or legal relationship is immaterial to the inquiry as to whether they were "in his care" at the time of the fire. The only relevant inquiry is into the nature of the relationship between defendant and the decedent girls. There is no question that he provided housing to protect them, looked after them on a semi-regular basis as the need of adult supervision arose, and was in charge of them by disciplining them as the need arose. The degree of care is not for this Court to determine; only that by his actions he took steps to evidence "care" for them. This he did.
Since he procured the policy after Rhonda and Rhoneshia came to live with him, there is no confusion at the time the policy was issued as to what the term "care" meant in the context of whether these two girls would be considered "insureds". This Court finds that the term "care" as applied to Rhonda and Rhoneshia was not ambiguous as used in the policy and the household exclusion clause. See, Wemhoff, at 406.
Furthermore, it is established Missouri law that household exclusion clauses, such as the subject clause, are unambiguous and preclude coverage for wrongful death claims arising out of or derived from the bodily injury to an insured no matter who pursues the claim and regardless of who seeks coverage under a policy. Kennedy v. State Farm Mutual Automobile Ins. Co., et. al., 986 S.W.2d 936 (Mo.App. 1999); American Motorists Ins. Co. v. Moore, 970 S.W.2d 876 (Mo.App.1998); Wintlend v. Baertschi, 963 S.W.2d 387 (Mo.App.1998).
Since Rhonda and Rhoneshia Butler were under the age of 21 and in the care of the named insured (defendant Warren) at the time of their deaths and during the period in which the subject policy was in effect, they were "insureds" as that term is defined in the subject policy and household exclusion clause. Furthermore, since the household exclusion clause is unambiguous and enforceable against wrongful death claims against an insured, no coverage exists to defendant Warren for the wrongful death action brought in state court by Melba Wilkes.

ORDER
In accordance with the memorandum filed herein this date,
IT IS HEREBY ORDERED that plaintiff St. Paul Fire & Marine Insurance Co.'s motion for summary judgment (# 20) be and is GRANTED and defendant Warren's motion for summary judgment (# 17) be and is DENIED. Judgment is hereby entered for plaintiff and against defendant on the merits of the plaintiff's complaint for declaratory judgment.
IT IS FINALLY ORDERED that this cause of action is hereby removed from the Court's trial docket of December 13, 1999.
NOTES
[1] Defendant Warren's "summary judgment" motion was originally filed as a motion to dismiss for failure to join a party and for failure to state a claim pursuant to Rule 12(b)(6). On November 8, 1999 this Court denied the motion as it pertained to the alleged failure to join a party, but converted the remainder of the motion (failure to state a claim pursuant to Rule 12(b)(6)) to a summary judgment motion. See, Court Order # 23.
[2] The Court surmises that their relationship still exists because as of June 1999 defendant and Ms. Wilkes were the parents of a one (1) month old son.
[3] The submitted exhibits differ slightly as to the ages of these two children when Ms. Wilkes and defendant began their relationship; however, it appears to be a reasonable guess by the Court that Rhonda was a little over a year old while Rhoneshia was a little under a year old.
[4] Both parties have filed the same exhibits in support of their motions and responsive pleadings. For purposes of clarity and expediency only, the Court will cite to only one exhibit where identical exhibits have been filed. The Court's choice of which exhibit to cite to in no way reflects a subjective bias.
[5] It appears from the deposition testimony that Dericka generally slept simply wherever she fell asleep; i.e. that she did not have a regularly assigned bed or bedroom.
[6] Aid to Families of Dependent Children
[7] The state court petition asserts that the stove ignited the deadly fire. The cause of the fire is not in dispute or an issue in this case.