795 A.2d 151

**Gail Ann COSTELLO, et al.**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY.**

**No. 0309, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

March 29, 2002.

Howard K. Kurman (James R. Barrett and Offit, Kurman & Alms, P.A., on the brief), Owing Mills, for appellants.

Patricia McHugh Lambert (Sheri Green and Hodes, Ulman, Pessin & Katz, P.A., on the brief), Towson, for appellee.

Argued before JAMES R. EYLER, ADKINS, and WILLIAM W. WENNER, (Retired, specially assigned), JJ.

ADKINS, J.

In this case, we decide that a household exclusion clause in an automobile liability insurance policy limits coverage for a wrongful death claim brought by adult children against their father for negligently causing the death of their mother. On the afternoon of January 31, 1999, Gail Hill was driving his car in Carroll County when he fell asleep at the wheel, causing the car to veer off the side of the road and strike a telephone pole. At the time of the accident, Hill was accompanied by five

passengers-Anita Hill, his wife, in the front seat, and the couple's daughter, Gail Ann Costello, and her two children, along with Anita's sister in the back seat. Mrs. Hill died as a result of the accident.

The Hills had two insurance policies, a $300,000 per person/$300,000 per occurrence automobile liability policy ("the auto policy") and a $1,000,000 per occurrence personal umbrella policy covering Gail Hill ("the umbrella policy"), both issued by Nationwide. After the accident, Gail Costello and her sister, Janice Hill, appellants, notified Nationwide that they were making a claim against their father under the two insurance policies, alleging that his negligent operation of the insured vehicle was the proximate cause of their mother's death. These claims were made by appellants both on behalf of their deceased mother's estate ("survival claim") and as individual wrongful death beneficiaries of their mother ("wrongful death claim").

A dispute arose between Nationwide and appellants over the extent to which the auto and umbrella policies covered their claims. The parties apparently agreed that appellants' survival claim was limited by the household exclusion in the policies. They disagreed, however, about whether their wrongful death claim was similarly limited by the household exclusion in the policies.

To resolve this dispute, appellants filed a complaint in the Circuit Court for Baltimore County, seeking a declaratory judgment. Appellants filed a motion for summary judgment concurrent with their complaint. In response, Nationwide filed a motion to dismiss or, in the alternative, for summary judgment. Appellants challenge the circuit court's grant of summary judgment in Nationwide's favor, and present the following question for our review.

Did the trial court err as a matter of law in finding that appellants' potential collective recovery as wrongful death beneficiaries was limited to $20,000 by virtue of the household exclusion in the auto and umbrella policies?

Because we agree with the trial court that both policies, by their plain language, limit appellants' recovery based on the wrongful death of their mother to the $20,000 statutory minimum coverage prescribed in Maryland Code (1977, 1999 Repl. Vol., 2001 Cum.Supp.), section 17–103(b)(1) of the Transportation Article ("Trans."), we affirm the judgment.

## DISCUSSION

Appellants argue that the $300,000 upper limit of the auto policy applies, and above that, the umbrella policy kicks in, providing an additional $1,000,000 of coverage. Asserting that it is an issue of first impression in Maryland, appellants frame the controversy as "whether wrongful death beneficiaries . . . who are not members of a household may nevertheless be limited by a household exclusion because of their relationship with an insured who was expressly covered by such exclusion[.]" Nationwide dismisses this characterization, asserting that this is a simple case of contract interpretation and that the policies are clear and unambiguous in limiting appellants' recovery to the statutory minimum coverage of $20,000. It argues that appellants have failed to recognize "the distinction between what claims [they] are legally entitled to bring against their father" and what claims Nationwide is liable for.

### A.

### Standard Of Review

We are asked to review the trial court's grant of summary judgment to Nationwide. "It is essential to entry of a summary judgment . . . that there be no genuine dispute as to any material fact and that the moving party be entitled to judgment as a matter of law." *White v. Friel,* 210 Md. 274, 285, 123 A.2d 303 (1956). Accordingly, the standard for appellate review is essentially whether the trial court was legally correct in granting summary judgment. *See Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 204, 680 A.2d 1067 (1996). Thus, we "review[ ] the same material from the record and decide[ ] the same legal issues as the [trial] court[.]" *Lopata v. Miller,* 122 Md.App. 76, 83, 712 A.2d 24, *cert. denied,* 351 Md. 286, 718 A.2d 234 (1998).

In granting Nationwide's motion for summary judgment, the trial court declared that "(1) [t]he coverage provided to Gail Hill for all claims asserted by Plaintiffs is limited to $20,000.00 under [the auto policy], and (2) [the umbrella policy] provides no coverage for Plaintiff's claims." We review the legal soundness of these conclusions.

## B.

### Standards Governing Interpretation Of Insurance Policies

Insurance policies are contracts between the insured and the insurer, and are interpreted as such by the courts. Maryland does not follow the rule that insurance policies should, as a matter of course, be construed against the insurer. Instead, ordinary principles of contract interpretation apply. Accordingly, if no ambiguity in the terms of the insurance contract exist[s], a court has no alternative but to enforce those terms. Nevertheless, under general principles of contract construction, if an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument.*
*Dutta v. State Farm Ins. Co.,* 363 Md. 540, 556, 769 A.2d 948 (2001)(quotation marks and citations omitted)(emphasis in original). Policy language is afforded its usual, ordinary, and accepted meaning. *See Nationwide Mut. Ins. Co. v. Scherr,* 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied,* 337 Md. 214, 652 A.2d 670 (1995). This "is the meaning that a reasonably prudent layperson would give to the term." *Id.* "If a reasonable layperson could infer two different meanings from the language used, the language is ambiguous." *Id.*

## C.

### Interpreting The Policies

### i.

### Automobile Liability Policy

The auto policy provides that "[Nationwide] will pay for damages for which [the insured is] legally liable as a result of

an accident arising out of the ... use ... of [the insured's] auto." The policy covers "damages ... involv[ing] property damage ... or ... bodily injury." "Bodily injury" is defined as "bodily injury[,] ... sickness[,] ... disease[,] ... or ... death ... of any person." Under a section entitled "Limits and Conditions of Payment," the auto policy elaborates on the scope of Nationwide's liability for "bodily injury" damages. It states:

The limit shown ... for Bodily Injury Liability for any one person is for *all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person* as a result of one occurrence.

*The per-person limit is the total amount available when one person sustains bodily injury, including death, as a result of one occurrence. No separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of bodily injury, including death, to one person* as a result of one occurrence. (Emphasis added.)

■■ The auto policy also includes nine "coverage exclusions," which limit the initial scope of the policy. Exclusion 9, the so-called "household exclusion," is at issue here. It excludes from coverage,

[b]odily injury to any insured or any member of an insured's family residing in the insured's household. However, this exclusion applies only to the extent that the limits of liability for this coverage exceed the limits of liability required by Maryland law.

The latter sentence is meant to reflect the provisions of Trans. section 17–103(b)(1), otherwise known as the "Maryland Financial Responsibility Law," which provides for a statutory minimum coverage of $20,000 per person.[1] The purpose of a

---

1. That section reads:

The [vehicle liability insurance policy] required under this subtitle shall provide for at least ... [t]he payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person

household exclusion such as this is "to protect the insurer against collusive or cozy claims ... [and] to exempt him from liability stemming from one whose natural ties and pulls are likely to favor a claimant who lives in the same household[.]" *State Farm Mut. Auto. Ins. Co. v. Briscoe*, 245 Md. 147, 151, 225 A.2d 270 (1967).

The parties disagree about whether the household exclusion limits Nationwide's liability under the policy for appellants' individual wrongful death claim to the $20,000 statutory minimum prescribed by the Maryland Financial Responsibility Law. Appellants contend that, although the household exclusion applies to their survival claim on behalf of their deceased mother because she "resid[ed] in the insured's household" at the time of her "bodily injury," the household exclusion does not apply to their wrongful death claim. They assert that the language of the auto policy is unambiguous in this respect. According to appellants, "[s]ince the literal terms of the household exclusion in [their father's] policy would not cover [them] they cannot be bound by the terms of the exclusion." They argue, in other words, that since neither appellant resided in their father's house at the time of the accident, the exclusion does not apply to claims brought by them in their individual capacities, even if stemming from the bodily injury of a person to whom the exclusion applies. Appellants urge, moreover, that even if we find the language ambiguous, they should still prevail because any ambiguity must be construed in favor of the insured. They further assert that the intent behind both the Maryland wrongful death statute and stan-

---

and up to $40,000 for any two or more persons, in addition to interest and costs[.]

Md.Code (1977, 1999 Repl.Vol., 2001 Cum.Supp.), § 17–103(h)(1) of the Transportation Article. Exclusionary clauses in vehicle liability insurance policies apply only to the extent that the coverage exceeds the statutory minimum, but cannot waive liability for the statutory minimum amount prescribed in the Maryland Financial Responsibility Law. *See Walther v. Allstate Ins. Co.*, 83 Md.App. 405, 411–12, 575 A.2d 339, *cert. denied*, 320 Md. 801, 580 A.2d 219 (1990)(household exclusion); *Provident Gen. Ins. Co. v. McBride*, 69 Md.App. 497, 504, 518 A.2d 468 (1986), *cert. denied*, 309 Md. 326, 523 A.2d 1013 (1987)(generally).

dard household exclusions in insurance policies favors their interpretation.

Nationwide also argues that the policy is unambiguous. It contends, however, that the policy language is unambiguous in *limiting* appellants' recovery to the statutory minimum coverage. According to Nationwide, because the policy itself only covers "bodily injury," and the only person suffering "bodily injury" was Anita Hill, an individual to whom Exclusion 9 is applicable, "coverage for all claims, including derivative claims, flowing from Anita Hill's bodily injury, is limited to $20,000." We agree with Nationwide's interpretation because appellants' claim is not a bodily injury independent of the death of their mother. Our holding is consistent with our own precedent, as well as that of other jurisdictions that have addressed the issue.

The Court of Appeals has held that solatium[2] damages claimed in a wrongful death action are not, in and of themselves, "bodily injury" damages. *See Daley v. United Svcs. Auto. Ass'n*, 312 Md. 550, 553–54, 541 A.2d 632 (1988). In *Daley,* the parents of a minor child killed in an automobile accident obtained judgments against the driver totaling $225,000, including both a survival action on behalf of the child, and wrongful death actions by the parents. The driver was insured under a policy with a $100,000 per person limit, and a $200,000 per occurrence limit.

The driver's insurer tendered payment of only $100,000, asserting that only the decedent had suffered a "bodily injury," and the wrongful death claims by the parents did not constitute a separate and second "bodily injury" that would trigger an additional $100,000 of coverage. The Court of

---

2. The term "solatium" was used to refer to those damages allowable pursuant to then Maryland Code (1974, 1984 Repl.Vol.), section 3–904(d) of the Courts and Judicial Proceedings Article ("CJ"), allowing damages for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education[.]"

Appeals reviewed, with approval, decisions of other jurisdictions which held that the "per person" liability limit

> applies to all claims of damage flowing from such bodily injury. Therefore, such consequential or derivative damages are computed together with the claim for bodily injury of which they are a consequence.

> These principles have been applied in wrongful death actions. For example, where a widow and two children sued over the death of the husband-father, the limit of liability was that for bodily injury to one person. "The limit[ ] as to 'each person' relates to a person suffering bodily injury and not to the person or persons who may suffer damages in consequence of such injury."

> Where state law creates a right to damages for mental anguish suffered by those in specified relationships to the person who suffers bodily injury or death, it has been held that the damages for mental anguish are, in effect, derivative of the single bodily injury.

*Id.* (citations omitted); *see also Scherr,* 101 Md.App. at 696–98, 647 A.2d 1297 (applying *Daley* to hold $100,000 per person limit applicable to wrongful death claim by husband and sons of woman killed by negligent insured).

Maryland courts have not expressly applied these principles to a situation in which the person suffering "bodily injury" or death is covered by a policy exclusion, limiting his or her recovery to the statutory minimum coverage. Other jurisdictions confronted with this situation, however, have concluded that wrongful death claims are subject to the "per person" liability limit applying to the party who was killed.

In *Am. Motorists Ins. Co. v. Moore,* 970 S.W.2d 876 (Mo.Ct. App.1998), a wrongful death claim was brought by the mother and sons of a woman killed by her husband. The husband was insured by AMI. The AMI policy contained a standard household exclusion. The court, finding the language of the policy clear and unambiguous, held the wrongful death claims to be derivative of the deceased's bodily injury, and limited recovery

to the amount the deceased would have been permitted to recover under the policy. *See id.* at 878–79.

Similarly, in *St. Paul Fire & Marine Ins. Co. v. Warren,* 87 F.Supp.2d 904 (E.D.Mo.1999), the federal district court, interpreting an insurance policy under Missouri law, found a standard household exclusion clause to unambiguously "preclude coverage for wrongful death claims arising out of or derived from the bodily injury to an insured *no matter who pursues the claim and regardless of who seeks coverage under a policy.*" *Id.* at 911 (emphasis added).

In *Nationwide Mut. Fire Ins. Co. v. Mazzarino,* 766 So.2d 446 (Fla.Dist.Ct.App.2000), the Florida Court of Appeals concurred with the reasoning employed in *Warren* and *Moore.*

> [I]nsurance coverage for a wrongful death claim depends on whether coverage existed for the loss in the first instance.... Coverage and benefits depend upon the insured's substantive rights under the contract, not upon who is enforcing them. The plain language of the contract excluded coverage for [the deceased's] death under her automobile insurance policy. We are persuaded by the reasoning of ... courts in other jurisdictions that have held the family exclusion to bar wrongful death claims under similar facts. *See Farmers Ins. Exch. v. Stratton,* 145 Cal.App.3d 612, 193 Cal.Rptr. 119 (1983); *Withers v. Meridian Mut. Ins. Co.,* 626 S.W.2d 214 (Ky.Ct.App.1980); *see also Home Ins. Co. v. Monaco,* 405 F.Supp. 321 (E.D.Pa. 1975), aff'd, 544 F.2d 512 (3d Cir.1976).

*Id.* at 448–49. In *Mazzarino,* the teenage son of a woman killed in a car accident by the insured, her husband, brought a claim against the insurer under the insured's auto policy. The policy, however, excluded coverage for damages resulting from "bodily injury to any insured or any member of an insured's family." *Id.* at 448. In reversing a grant of summary judgment in favor of the son, the Florida Court of Appeals held that the son's wrongful death claim was subject to the same family exclusion that would have limited his mother's claims had she lived. *See id.* at 448–49.

Here, too, Nationwide's policy covers "bodily injury," but limits coverage for injury to the insured or any family member to $20,000. Appellants' claim to coverage depends upon the existence of their mother's bodily injury to trigger the policy's coverage. If their emotional injuries were not linked to their mother's "bodily injury," those injuries clearly would be non-compensable under the policy, because there is no independent coverage for emotional injury. Since their damages are derivative of their mother's bodily injury, they are limited to the amount that she would be able to recover under the policy. Because Mrs. Hill was living in Mr. Hill's household at the time of the accident, the household exclusion would limit her recovery to $20,000. Therefore, the total recovery for appellants under the auto policy, in both their wrongful death and survival actions, is limited to the $20,000 statutory minimum coverage.

Appellants argue that, because they are not suing as representatives of the decedent, and instead assert a personal claim for their own loss, the household exclusion does not apply. They rely on *Eagan v. Calhoun*, 347 Md. 72, 698 A.2d 1097 (1997), in which the Court of Appeals decided that a child's wrongful death claim against the child's father for the murder or voluntary manslaughter of the child's mother is not barred by the doctrine of parent-child immunity. *See id.* at 74, 698 A.2d 1097. The Court's rationale was that murder or manslaughter "constitutes cruel and inhuman treatment," and "an abandonment of the parental relationship and of the broader family harmony" on which the doctrine rests. *Id.* at 85, 698 A.2d 1097. Before reaching its conclusion, however, the Court rejected the guardian's claim that the immunity doctrine did not apply, because the children's action derives from that of their mother, who would not have been barred from suing her husband had she lived. *See id.* at 81, 698 A.2d 1097. The Court of Appeals explained that "[i]t follows from the fact that the action is a personal one to the claimant that the claimant is ordinarily subject to any defense that is applicable to him or

her, whether or not it would have been applicable to the decedent." *Id.* at 82, 698 A.2d 1097.

Relying on this language, appellants argue:

In a wrongful death action, the rights and obligations of the decedent do not necessarily determine the rights and obligations of the beneficiaries pursuant to that wrongful death action. Thus, the mere fact that Anita Hill may have been bound by a $20,000.00 limitation contained in the household exclusion of the auto policy ... does not bind contractually, or otherwise, the [a]ppellants, who have their own independent wrongful death action.

What appellants overlook with this argument is that we are not addressing here the right to bring a wrongful death action, or what are defenses to that action. Rather, we consider whether there is coverage under Nationwide's policy for this action. In the context of insurance coverage, the *Daley* Court cited with approval out-of-state authority holding that "[w]here state law creates a right to damages for mental anguish suffered by those in specified relationships to the person who suffers bodily injury or death, ... the damages for mental anguish are, in effect, derivative of the single bodily injury." *Daley,* 312 Md. at 554, 541 A.2d 632. Moreover, the Nationwide policy provides that "[n]o separate limits are available to anyone for derivative claims, statutory claims, or any other claims made by anyone arising out of bodily injury, including death, to one person as a result of one occurrence."

Although the *Daley* rule limits appellants' recovery to $20,000 because appellants' claim is a consequence of their mother's death, the consequential or derivative nature of the claim is what entitles appellants to any insurance coverage. *See Commercial Union Ins. Co. v. Rivera,* 358 F.2d 480, 484 (1st Cir.1966) (insurance policy obligating insurer to pay loss or liability for bodily injuries also includes liability for children's mental pain and suffering as a result of their father's injuries because such damages are a consequence of their father's injuries). The policy does not provide for coverage

for emotional injuries that are not a consequence of some bodily injury.

Appellants also cite two out-of-state cases in support of their contention that their wrongful death claim is not limited by the household exclusion in the auto policy: *Wintlend v. Baertschi,* 963 S.W.2d 387 (Mo.Ct.App.1998) and *Interinsurance Exch. v. Campbell,* 187 Cal.App.3d 242, 232 Cal.Rptr. 27 (1986). We agree with Nationwide, however, that these cases do not lend support to appellants' position.

In *Wintlend,* a husband murdered his wife and two young sons, and then committed suicide in his home. The couple had a homeowner's insurance policy that provided coverage for "damages because of bodily injury or property damage caused by an occurrence." Claimants brought a wrongful death action premised on the death of the wife and children, and raised a question as to the maximum recovery under the homeowner's policy. The trial court held that the wrongful death damages were independent "bodily injur[ies]" resulting from the deaths. The *Wintlend* policy also contained a standard household exclusion. On appeal, the Missouri Court of Appeals reversed the decision of the trial court, and held that a plain reading of the definition of "bodily injury" in the policy compelled a conclusion that wrongful death damages were included in "bodily injury" damages, and were thus limited by the household exclusion. *See Wintlend,* 963 S.W.2d at 390.

> [W]hile claimants arguably suffered a loss of services, their loss will only be covered if it resulted from bodily harm, sickness or disease covered by the policy. Claimants' losses derived solely from bodily harm suffered by wife and children, who were insureds under the policy. Because the policy excluded coverage for bodily harm, sickness or disease to any insured, it follows that damages derived from the insureds' harm, whether or not they are considered separate injuries, are also excluded.

*Id.*

In an attempt to distinguish *Wintlend,* appellants point out that the definition of "bodily injury" in the Nationwide auto

policy does not explicitly include loss of services, as does the definition of "bodily injury" in the *Wintlend* policy. The *Wintlend* policy defined "bodily injury" as "bodily harm, sickness, or disease, including required care, loss of services and death that results." *Id.* at 389. In contrast, the Nationwide auto policy defines "bodily injury" as "bodily injury[,] ... sickness[,] ... disease[,] ... or ... death [.]" Thus, appellants assert, the household exclusion in our case "does not specifically exclude claims for loss of consortium or loss of services ... [and] cannot be interpreted to impose the same quantitative limitations upon [a]ppellants as it would have on their mother."

We disagree. As we explained earlier, the Court of Appeals has recognized that, in an insurance context, wrongful death claims are derivative of or consequential to the underlying bodily injury from which they arise. *See Daley,* 312 Md. at 554–55, 541 A.2d 632. Thus, since the policy provides that "the limi[t] shown ... for Bodily Injury Liability for any one person is for all legal damages, including all derivative claims, claimed by anyone arising out of and due to bodily injury to one person as a result of one occurrence[,]" it follows that appellants' wrongful death damages are included within their mother's "bodily injury" and are thus limited by the household exclusion in the policy.

*Interinsurance Exch.* also does nothing to advance appellants' position. In that case, California's intermediate appellate court stated that "the exclusion of policy coverage for the death of an insured ... under the same policy does not compel the conclusion [that] an uninsured third party claim for the wrongful death of an insured is likewise excluded," because a wrongful death claim is "original and distinct" from the claim of the injured party herself. *Interinsurance Exch.,* 232 Cal. Rptr. at 30. Although the court went on to express reservations about limiting such wrongful death claims, it ultimately followed California precedent consistent with *Moore, Warren,* and *Mazzarino,* in holding that the third-party wrongful death claim at issue was limited by the policy exclusion applicable to the decedent. *See id.*

■ We affirm the trial court's decision regarding the scope of the auto policy. Appellants' claim for damages arose out of the wrongful death of their mother, a member of the insured's family residing in the insured's household at the time of the accident or occurrence. Because the policy excludes coverage for damages for the death of such an individual, the claim of appellants, the adult children, for damages arising out of that death is also excluded from coverage under Exclusion 9.[3] There was no error in the trial court's analysis.

## ii.

### The Umbrella Policy

The umbrella insurance policy covers "damages an insured is legally obligated to pay in excess of ... the [limit of the underlying automobile policy]." The policy requires, however, that "damages must be due to an occurrence." Under the terms of the policy, "[an] occurrence ... must result in bodily injury, property damage, or personal injury caused by an insured."

The umbrella policy, moreover, contains the same household exclusion as the underlying auto policy. It excludes from coverage "bodily injury or personal injury to an insured who lives in your household." "Bodily injury" is defined by the umbrella policy as "bodily harm, including resulting sickness, disease, or death." Therefore, appellants are excluded from

---

**3.** We reject appellants' contention that this construction is against public policy. Appellant is correct that the Maryland wrongful death statute "specifically permits wrongful death claims for loss of consortium by adult children for the death of a parent." *See* CJ (1973, 1998 Repl.Vol., 2001 Cum.Supp.), § 3–901 *et seq.* Simply because their wrongful death recovery under the Nationwide policy is limited by the household exclusion, however, does not mean that appellants are barred from bringing a wrongful death claim against their father. It simply means that Nationwide is not liable for any recovery resulting from that lawsuit.

We fail to understand how this holding is in violation of the legislature's intent in passing the wrongful death statute. Our holding in no way interferes with appellants' underlying right to bring a wrongful death action against their father.

coverage under the umbrella policy for the same reasons they are excluded from coverage under the auto policy. *See Benner v. Nationwide Mut. Ins. Co.*, 93 F.3d 1228, 1239–41 (4th Cir.1996)(interpreting umbrella policy language under Maryland law). The trial court's reasoning was sound, and we affirm the judgment.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**