Margaret R. CIERZAN, by her Guardian ad Litem, D.J. Weis, and Patricia M. Cierzan, Plaintiffs-Appellants,†

v.

Jessica KRIEGEL and the Estate of Virginia F. Kriegel, Defendants,

PELLA MUTUAL INSURANCE COMPANY, Defendant-Respondent,

SHAWANO COUNTY DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Nominal-Defendant.

Court of Appeals

*No. 02–1209. Submitted on briefs October 21, 2002.—Decided November 19, 2002.*

2002 WI App 317

(Also reported in 655 N.W.2d 217.)

† Petition to review denied 3-13-03.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *D. James Weis* and *Habush Habush & Rottier S.C.* of Rhinelander.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Arnold P. Anderson* and *Mohr & Anderson, S.C.* of Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Margaret Cierzan appeals a summary judgment finding that Jessica Kriegel was not an insured of Pella Mutual Insurance Company at the time Jessica accidentally started a fire in her grandmother, Virginia Kriegel's, home, severely injuring Cierzan. Kriegel, the named insured under the Pella policy, was not at home when the fire broke out. The trial court concluded that Jessica was not "in [Kriegel's] care" at the time of the fire and therefore the corresponding clause in the insurance policy did not apply to make Jessica an insured. Cierzan argues that the phrase "in your care" is ambiguous, and based on Jessica's relationship with Kriegel, the trial court erred in its conclusion. While we agree with Cierzan that a named insured need not be physically present for someone to be in the insured's care and therefore covered by the policy, we nonetheless conclude that under the facts of this case Jessica was not under Kriegel's care at the time of the fire. Therefore, we affirm the judgment.

## Background
¶ 2. The facts of the case are undisputed. Jessica, who was sixteen at the time of the fire, lived very close to Kriegel's home. Kriegel's grandchildren—Jessica and her three older brothers—as a whole spent a good deal of time with Kriegel, who was elderly, ill and blinded by diabetes. One or more of the grandchildren visited daily to assist Kriegel with various tasks and took turns spending the night. Jessica would spend a night at Kriegel's only if one of her brothers could not, although this was infrequent. Jessica lived with her parents, and Kriegel did not consider Jessica to be living with her.

¶ 3.　Kriegel had rules for the grandchildren when they were in her home, including a rule prohibiting smoking. Kriegel also gave the grandchildren instructions regarding what they could or could not do in her home and disciplined them accordingly.

¶ 4.　On August 2, 1998, Kriegel was out of town shopping with her daughter.[1] Because they finished late in the day, Kriegel decided to stay at her daughter's home for the night. Kriegel did not know that Jessica and Jessica's fourteen-year-old friend, Cierzan, had gone to her home, although Jessica had blanket permission to be in the home. The girls had gone to Kriegel's to watch a football game on her big screen television. Jessica's mother came over to check on the girls at least twice. On her final visit, she had planned to take the girls back to Jessica's home, but Cierzan was already asleep and could not be roused. Jessica's mother allowed the girls to stay at Kriegel's because Jessica had spent the night there other times.

¶ 5.　Jessica, however, disobeyed the rules and lit a cigarette causing a fire that severely injured Cierzan. Cierzan subsequently brought suit against Jessica, Kriegel, Kriegel's insurer Pella, and Shawano County Department of Health and Social Services.

¶ 6.　Pella did not deny coverage for Kriegel but denied that Jessica was an insured. Pella and Cierzan brought competing motions for summary judgment on the issue of coverage and Pella prevailed. Following a trial, the jury found Jessica 100% negligent and awarded damages to Cierzan. Cierzan now appeals the

---

[1] Jessica and her brothers are the children of Kriegel's son; thus, Kriegel's daughter should not be mistaken for Jessica's mother.

final judgment on the sole issue whether summary judgment for Pella was appropriate.

**Standard of Review**

¶ 7. We review summary judgments de novo applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. The interpretation of an insurance contract and whether coverage exists under a given contract are questions of law we review independently. *Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis. 2d 56, 61, 601 N.W.2d 312 (Ct. App. 1999).

**Discussion**

¶ 8. The relevant language in Kriegel's policy from Pella states:

**Insured** means:

a. **you**;

b. **your** relatives if residents of **your** household;

c. persons under the age of 21 in **your** care or in the care of **your** resident relatives . . . .

The rights of insureds and injured parties are fixed at the time of the loss. *Effert v. Heritage Mut. Ins. Co.*, 160 Wis. 2d 520, 527, 466 N.W.2d 660 (Ct. App. 1990). Because Jessica was sixteen at the time, the sole issue

on appeal is whether Jessica was a person "in [**Kriegel's**] care" under subsection c on the night of the fire.[2]

¶ 9. Pella claims Jessica could not be in Kriegel's care because "Kriegel was out of town and did not even know that [Jessica] was at her home." However, physical presence of the insured caregiver is not necessarily required for someone to be in the insured's care. To hold otherwise would mean that coverage could fluctuate by the hour, a patently unreasonable result.[3]

¶ 10. Cierzan asserts that because "care" has several different dictionary definitions, the policy language "in your care" must be ambiguous and we must therefore resolve this ambiguity against Pella. *See Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975). We disagree. The mere fact that a word has more than one dictionary meaning does not necessarily make the word ambiguous if only one meaning applies in the context and comports with the parties' objectively reasonable expectations.[4] *Ruff v. Graziano*, 220 Wis. 2d

---

[2] We note that in arguing the summary judgment motion in the trial court, Cierzan suggested that Jessica also fit the definition of a resident relative. However, this issue is not before us on appeal and is therefore deemed abandoned. *Reiman Assocs., Inc. v. R/A Adver., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981).

[3] We interpret insurance contracts to meet the reasonable expectations of the insured. *Danner v. Auto-Owners Ins.*, 2001 WI 90, ¶ 57, 245 Wis. 2d 49, 629 N.W.2d 159.

[4] Cierzan suggests several interpretations of a person "in your care" based on the dictionary definition of "care." These meanings include a person you are worrying about, are supporting, are guarding, are interested in, a person you love, or a

513, 524, 583 N.W.2d 185 (Ct. App. 1998). We conclude that as used here, the meaning of "in your care" is unambiguous. It is an idiomatic phrase peculiar to itself and readily understood as a phrase by speakers and readers of the English language. *See Henderson v. State Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999).

¶ 11. We note first that there must be some distinction between a person in the care of the insured—because this person becomes an insured under the policy as well—and an ordinary guest of the insured. An insured may provide shelter and often food or other amenities to a guest but does not necessarily care for the guest as an insurance policy with "in your care" language contemplates. Otherwise, we would always interpret guests as persons in the care of the insured and therefore extend insurance coverage to guests at any time for any reason. This would create a result well beyond what any reasonable insurer contemplates.[5]

¶ 12. Nevertheless, the definition and application of "in your care" or "in the care of" are questions of first impression for us. We find guidance in *Henderson*, 596 N.W.2d at 190. In that case the Michigan Supreme Court considered the definition of the phrase "in the

person you are paying attention to. We assume Cierzan advances these definitions merely to illustrate the breadth of the term "care" rather than to contend that they comport with a reasonable insured's expectation of what the word signifies in the context of an insurance policy.

[5] When unambiguous policy language precludes coverage, no insurance contract should be rewritten by construction to bind an insurer to a risk it did not contemplate according to the policy. *American States Ins. Co. v. Skrobis Painting & Decorating*, 182 Wis. 2d 445, 451, 513 N.W.2d 695 (Ct. App. 1994).

care of" as contained in a homeowner's insurance policy and its application to a girl living in the insured's home. The court enunciated eight "nonexclusive common-sense" factors that we accept as a logical starting point for our analysis. *Id.* at 195–96.

¶ 13. In considering whether a person is in the care of an insured, we deem the following relevant considerations: (1) whether the insured has a legal responsibility to care for the person; (2) whether the person has some form of dependency on the insured; (3) whether the insured has a supervisory or disciplinary responsibility for the person; (4) whether the insured is providing substantial and essential financial support for the person; (5) if the person is living with the insured, then whether the arrangement is temporary or permanent, the length of time the arrangement has existed, and whether and how long the arrangement is expected to continue; (6) the age of the person allegedly in the insured's care (because the younger the person is, the more likely it is he or she is in the insured's care); (7) the person's physical or mental health status (because a person with health problems is more likely to be in the insured's care); and (8) whether the person allegedly in the insured's care is gainfully employed (because someone so employed is less likely to be dependant on the insured). *See id.*

¶ 14. It is undisputed that Kriegel was not Jessica's legal guardian. Kriegel did not have the same duties as Jessica's parents or a legal guardian (factor one). Cierzan does not argue that Jessica was a dependent of Kriegel (factor two), and it is undisputed that Kriegel did not provide financial support for Jessica (factor four) and that Jessica lived with her parents,

only occasionally spending the night at Kriegel's (factor five). Thus, four of the eight factors suggest that Jessica was not in Kriegel's care.

¶ 15. Kriegel did have rules that Jessica was expected to follow (factor three), and Cierzan claims this supervisory or disciplinary role suggests Jessica was in Kriegel's care. However, it is not uncommon for hosts to have rules for their guests, such as a rule prohibiting smoking or entrance into certain rooms of the home. Rules and discipline, absent more, are insufficient to make a guest a person in the insured's care.

¶ 16. While Jessica was only sixteen at the time of the accident and was therefore a minor (factor six), this is not sufficient to suggest Jessica was in Kriegel's care. A child who is sixteen typically has greater independence than a younger child. For example, it is not unusual for sixteen-year-olds to be left home alone when their guardians go away for a period of time. Many have a driver's license and thus potentially greater mobility. It is not unusual for a sixteen-year-old to have part-time employment. In contrast, a ten-year-old child, for example, cannot usually stay alone, certainly cannot drive, and generally cannot work beyond household chores. Here, Jessica's age and status as a minor are insufficient to demonstrate she was in Kriegel's care.

¶ 17. Although there is no showing whether Jessica had a part-time job (factor eight), she would likely still depend on others to support her. However, it is undisputed that Kriegel was not providing financial support for Jessica, so Jessica would still depend on someone other than Kriegel—namely, Jessica's parents. Finally, Jessica had no mental or physical health problems that would suggest she was in Kriegel's care (factor seven).

¶ 18. Beyond these eight factors, none of which adequately indicates Jessica was in Kriegel's care, we consider the relationship Jessica had with Kriegel. Jessica's testimony indicated she spent several consecutive nights at Kriegel's home during the 1997–1998 school year to give her brother a respite. Assuming without deciding that Jessica was in Kriegel's care at that time, such a relationship is insufficient to put Jessica in Kriegel's care on the night of the fire. The night of the fire, Jessica was not staying a period of consecutive nights at Kriegel's home. Instead, Jessica and Cierzan had gone to Kriegel's house for fun, not because Kriegel needed Jessica's assistance. Pella argues, and we agree, that a person is not perpetually "in the care of" an insured simply because the person may have been "in the care of" the insured at some previous time.

¶ 19. We also note that Kriegel was elderly, had heart problems, and had lost her sight to diabetes. Jessica did not spend time at Kriegel's home because Jessica needed care but because Kriegel did. While we acknowledge Kriegel set rules, there is nothing in the record to demonstrate that Kriegel was ever intended to be a substitute caregiver for Jessica. Rather, the facts indicate Jessica and her brothers, when spending any extended time at Kriegel's, served as live-in aides rather than live-in dependants or children in her care.

¶ 20. Considering the eight common-sense factors noted above, Jessica's relationship with Kriegel, her reason for going to Kriegel's home on the night of the fire, and her continued dependence on her parents, we are satisfied that the trial court was correct in its conclusion that Jessica was not in Kriegel's care on the

night of the fire that injured Cierzan. Kriegel's insurance policy from Pella did not extend to cover Jessica's negligence.

*By the Court.*—Judgment affirmed.