J-A11043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD RAYMONT T/D/B/A RAYMONT CONSTRUCTION COMPANY | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| NATIONWIDE MUTUAL INSURANCE COMPANY AND WILLIAM WILKINSON | : : : | |
| APPEAL OF: NATIONWIDE MUTUAL INSURANCE COMPANY | : : : | No. 725 WDA 2013 |

Appeal from the Judgment Entered April 5, 2013
In the Court of Common Pleas of Greene County
Civil Division at No(s): A.D. 1169-2011

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED SEPTEMBER 15, 2014**

Appellant, Nationwide Mutual Insurance Company ("Nationwide"), appeals from the summary judgment entered in the Greene County Court of Common Pleas, in favor of Appellee, Richard Raymont t/d/b/a Raymont Construction Company, in this declaratory judgment action. We reverse and remand for entry of judgment in favor of Nationwide.

The relevant facts and procedural history of this appeal are as follows. In 2007, Appellee entered into a contract with Southwest Regional Medical Center ("Hospital"). Under the contract, Appellee agreed to plow and salt Hospital's parking lots in the event of inclement winter weather. The contract ran from December 1, 2007 until March 31, 2008.

On December 7, 2009, William Wilkinson started a civil action against

Appellee by filing a writ of summons. Mr. Wilkinson subsequently filed a complaint, alleging he had slipped, fallen, and suffered injuries in Hospital's parking lot on December 7, 2007. Mr. Wilkinson claimed, "[He] was attempting to traverse [the parking lot] when he was caused to fall on the surface of the parking lot by an accumulation of snow and/or ice and/or other defect of the parking lot…." (Nationwide's Brief in Support of Summary Judgment Motion, filed 12/14/12, at Exhibit A; R.R. at 6a). Mr. Wilkinson's complaint included a negligence count, averring Appellee failed to clear the ice and snow from the parking lot and failed to warn him about the dangerous condition. Mr. Wilkinson's complaint also included a breach of contract count, asserting Appellee breached the contract with Hospital, to which Mr. Wilkinson was a third party beneficiary.

Appellee sent Mr. Wilkinson's complaint to Nationwide, Appellee's insurance provider. Nationwide had issued Appellee a commercial general liability policy ("the policy") covering the period when Mr. Wilkinson's purported accident occurred. By letter dated June 16, 2010, Nationwide denied coverage. Regarding the breach of contract claim, Nationwide explained that a "breach of contract does not fall within the definition of occurrence which results in bodily injury or property damage" under the policy. (*Id.* at Exhibit D; R.R. at 61a). Regarding the negligence claim, Nationwide emphasized that the policy contained a designated work exclusion ("the exclusion"), explicitly barring coverage for snow removal

operations.

On March 9, 2011, Mr. Wilkinson filed an amended complaint. The amended complaint was virtually identical to the original complaint, but Mr. Wilkinson omitted the word "snow" from the amended pleading. Consequently, Mr. Wilkinson averred, "[H]e was caused to fall on the surface of the parking lot by untreated ice and/or other defect of the parking lot…." (*Id.* at Exhibit E; R.R. at 67a). Appellee sent the amended complaint to Nationwide. By letter dated May 25, 2011, Nationwide continued to deny coverage.

On December 2, 2011, Appellee initiated a declaratory judgment action against Nationwide, maintaining the exclusion was ambiguous:

> 10. In denying coverage and a defense to [Appellee], Nationwide relied upon an exclusion in its policy for "snow removal operations."
>
> 11. The First Amended Complaint filed by William Wilkinson against [Appellee] does not allege a claim against [Appellee] for failing to remove snow. To the contrary, it alleges that [Appellee] was negligent in failing to remove ice.
>
> 12. In its disclaimer of coverage letter of May 25, 2011, Nationwide asserted the following: "the aforementioned insurance policy contains Endorsement C.G. 2134, which excludes from coverage any snow removal procedures. Snow removal includes the whole process of snow and ice removal or treatment with salt, cinders, anti-skid, ice melt and/or other substances."
>
> 13. No such definition of snow removal including ice removal is contained anywhere in the policy.

14. The snow removal exclusion relied upon [by] Nationwide is ambiguous and this ambiguity is reflected by Nationwide's conduct by attempting to remove the ambiguity in its disclaimer of coverage letter by stating that snow removal includes the process of ice removal.

(Declaratory Judgment Complaint, filed 12/2/11, at 2-3; R.R. at 93a-94a).

On March 30, 2012, Nationwide filed an answer and new matter. The new matter reiterated that the exclusion barred Appellee's claims for defense and indemnification. Appellee filed a reply to the new matter on April 26, 2012.

On December 14, 2012, Nationwide filed a summary judgment motion. In it, Nationwide asked the court to declare that Nationwide had no duty to defend or indemnify Appellee against Mr. Wilkinson's claims. Appellee filed his own summary judgment motion on January 17, 2013. On April 5, 2013, the court entered summary judgment in favor of Appellee and against Nationwide. The court concluded as follows:

Nationwide's argument that the snow removal exclusion permits it to decline coverage can be summarized as: "Everybody knows that snow removal includes snow and ice removal." We are not so sure. Nationwide, in its letter of May 25, 2011, denying coverage, felt the need to expand on the terse language in the exclusion endorsement: "Snow removal includes the whole process of snow and ice removal or treatment with salt, cinders, anti-skid, ice melt, and/or other substance." Had that language been included in the endorsement, this litigation might not have occurred.

* * *

We note also that the Amended Complaint indicts [Appellee] for more than failing to keep the lot free from ice. It also charges [Appellee] with failure to warn and to provide "a safe area to traverse." It is not so clear that

these allegations are excluded by the phrase "snow removal operations." It may be, for instance, that [Appellee's] obligation was only to remove snow with plows or shovels. Perhaps the hospital arranged otherwise for ice control, such as by sending out a custodian with a bucket of salt. Ice control might be a separate operation altogether, undertaken by different entities.

(Trial Court Opinion, filed April 5, 2013, at 3-4) (internal citation omitted). Regarding Mr. Wilkinson's breach of contract claim, however, the court determined, "[A]llegations for breach of contract, even assuming Wilkinson is a beneficiary of that contract, do not constitute an "occurrence" within the meaning of an insurance policy and…Nationwide has no duty to defend or indemnify [Appellee] against liability on this count." (**Id.** at 5).

Nationwide timely filed a notice of appeal on April 26, 2013. The court did not order Nationwide to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

Nationwide raises one issue for our review:

DID THE TRIAL COURT ERR IN FINDING THAT NATIONWIDE…HAS A DUTY TO DEFEND AND INDEMNIFY ITS INSURED…RELATIVE TO AN UNDERLYING PERSONAL INJURY LAWSUIT, DESPITE A VALID AND UNAMBIGUOUS "DESIGNATED WORK EXCLUSION" FOR "SNOW REMOVAL OPERATIONS" SET FORTH IN THE COMMERCIAL GENERAL LIABILITY INSURANCE POLICY ISSUED BY NATIONWIDE TO [APPELLEE]?

(Nationwide's Brief at 5).

Initially, we observe:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to

- 5 -

determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [his] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court will disturb the trial court's order only upon an error of law or an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

- 6 -

\* \* \*

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden.

[I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if…charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

\* \* \*

*Glaab v. Honeywell Intern., Inc.*, 56 A.3d 693, 696-97 (Pa.Super. 2012) (quoting *Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 60–62 (Pa.Super. 2006) (internal citations and quotation marks omitted)).

On appeal, Nationwide contends basic contract interpretation principles support its conclusion that the exclusion precluded coverage for any claims arising out of Appellee's snow removal and ice treatment services. Nationwide insists "the natural, plain, and ordinary meaning of the phrase 'snow removal operations' necessarily includes the removal of snow, whether by shovel or plow, and the treatment of ice, whether by salting or cindering." (Nationwide's Brief at 15). Nationwide maintains the exclusion was clear, unambiguous, and susceptible to one reasonable interpretation.

To support its policy interpretation, Nationwide relies on Mr. Raymont's deposition testimony, where he essentially admitted that the exclusion applied to Mr. Wilkinson's claims. Nationwide also relies on language from Appellee's 2004 insurance application, indicating Appellee was in the business of paving driveways, parking lots, and sidewalks; Appellee expressly stated it did not perform snow plowing. Under these circumstances, Nationwide asserts it "issued a policy that provided coverage for claims related to the business activities listed in the application materials and not for claims related to an extraneous 'side' business…." (*Id.* at 17). Further, Nationwide maintains Mr. Wilkinson's omission of the word "snow" from the amended complaint amounts to artful pleading designed to avoid the exclusion. Nationwide concludes the court improperly entered summary judgment in favor of Appellee on Mr. Wilkinson's negligence claim.[1] We agree.

"An insurer's duty to defend and indemnify the insured may be resolved *via* declaratory judgment actions." **Erie Ins. Exchange v. Claypoole**, 673 A.2d 348, 355 (Pa.Super. 1996) (*en banc*).

> An insurer's duty to defend is distinct from, and broader than, its duty to indemnify an insured. An insurer is not obligated to defend all claims asserted against its insured; its duty is determined by the nature of the allegations in the underlying complaint. An insurer must defend its insured if the underlying complaint alleges facts which, if

---

[1] The court decided in favor of Nationwide with respect to Mr. Wilkinson's breach of contract claim.

> true, would actually or **potentially** bring the claims within the policy coverage.
>
> An insurer who refuses to defend its insured from the outset does so at its peril, …because the duty to defend remains with the insurer until it is clear the claim has been narrowed to one beyond the terms of the policy. An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion.

*Belser v. Rockwood Cas. Ins. Co.*, 791 A.2d 1216, 1219-20 (Pa.Super. 2002) (internal citations omitted) (emphasis in original). "The 'first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage.'" *American States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 59 (Pa.Super. 1998) (quoting *General Accident Ins. Co. v. Allen*, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997)).

"The interpretation of an insurance contract is a matter of law and is generally performed by a court." *Kropa v. Gateway Ford*, 974 A.2d 502, 505 (Pa.Super. 2009), *appeal denied*, 605 Pa. 701, 990 A.2d 730 (2010). The goal of insurance contract interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Madison Const. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "[A] court is required to give effect to such language, if unambiguous, but to interpret it in favor of the insured, if otherwise. Ambiguity exists if the language at issue could reasonably be construed in

more than one way." ***Lititz Mut. Ins. Co. v. Steely***, 567 Pa. 98, 104, 785 A.2d 975, 978 (2001). "Whether ambiguity exists cannot be resolved in a vacuum, …but must instead be considered in reference to a specific set of facts." ***Id.***

"When analyzing a policy, words of common usage are to be construed in their natural, plain, and ordinary sense." ***Continental Cas. Co. v. Pro Machine***, 916 A.2d 1111, 1118 (Pa.Super. 2007). "[W]hen 'the language of the [insurance] contract is clear and unambiguous, a court is required to give effect to that language.'" ***Mitsock v. Erie Ins. Exchange***, 909 A.2d 828, 831 (Pa.Super. 2006) (quoting ***Madison Const. Co., supra*** at 606, 735 A.2d at 106). A court must not distort the meaning of the language or resort to a strained contrivance to find an ambiguity. ***Mitsock, supra***.

> [T]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation[s] of the insured. In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved. However, while reasonable expectations of the insured are focal points in interpreting the contract language of insurance policies, an insured may not complain when his…reasonable expectations were frustrated by policy limitations, which are clear and unambiguous. Like every other contract, the goal of interpreting an insurance contract is to ascertain the intent of the parties as manifested by the language of the policy.

***St. Paul Mercury Ins. Co. v. Corbett***, 630 A.2d 28, 30 (Pa.Super. 1993) (*en banc*) (internal citations omitted).

Instantly, Appellee applied for insurance coverage in 2004. The insurance application submitted to Nationwide indicated Appellee was in the

business of "driveway/sidewalk paving." (**See** Nationwide's Brief in Support of Summary Judgment Motion at Exhibit H; R.R. at 81a). A supplemental application described Appellee's work duties as "excavating areas for pouring/preparing drains for basement floors, etc. before pouring/pouring sidewalks, driveways and home foundations." (**Id.**; R.R. at 85a). Appellee also answered "No" in response to the question, "Is snow plowing performed?" (**Id.**; R.R. at 88a). Nationwide subsequently provided Appellee with insurance coverage.[2]

The policy in effect in 2007, at the time of Mr. Wilkinson's purported accident, included the following exclusion:

> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> **EXCLUSION – DESIGNATED WORK**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of your work:**
>
> **SNOW REMOVAL OPERATIONS**
>
> \* \* \*

---

[2] In its brief, Nationwide asserts the policy renewed annually based on the 2004 application. In support of this assertion, Nationwide relies on a portion of Mr. Raymont's deposition that does not appear in the certified record.

> This insurance does not apply to "bodily injury" or "property damage" included in the "products – completed operations hazard" and arising out of "your work" shown in the Schedule.

(***Id.*** at Exhibit C; R.R. at 34a) (emphasis in original). In response to Nationwide's interrogatories, Appellee confirmed he did not seek general liability protection for snow and ice removal services. (***Id.*** at Exhibit I; R.R. at 169a).

In October 2007, Appellee entered into the snow removal contract with Hospital. Contrary to the trial court's findings, the contract contained specific terms demonstrating Appellee was responsible for treating the parking lots for ice. The contract stated, "Parking lots will be plowed for $100.00 per plow per hour. Parking lots will be salted or cindered for $120.00 per ton." (***Id.*** at Exhibit B; R.R. at 14a). The contract also stated, "If salt used or hours for plowing go over the contract amount, the additional cost will be added to the monthly bill." (***Id.***) At his deposition, Mr. Raymont elaborated on the obligations under the contract:

> [NATIONWIDE'S COUNSEL]: In regards to snow removal, does that also include removal of ice?
>
> [MR. RAYMONT]: Salt. I spread salt.
>
> [NATIONWIDE'S COUNSEL]: So what about cinders, is that also used to treat ice?
>
> [MR. RAYMONT]: I'd spread cinders on it. It's a non-skid. It does not remove the ice, it just puts a non-skid finish on the ice.

[NATIONWIDE'S COUNSEL]: Nevertheless, salt and cinders are used for snow and ice, are they not?

[MR. RAYMONT]: Correct.

[NATIONWIDE'S COUNSEL]: And a plow obviously, is used if you have a large accumulation of snow?

[MR. RAYMONT]: Correct.

[NATIONWIDE'S COUNSEL]: Would you agree both salt—strike that. Would [you] agree that snow and ice removal kind of go hand-in-hand?

[MR. RAYMONT]: I guess, yes.

(*Id.* at Exhibit J; R.R. at 152a-153a.) Mr. Raymont also testified that he would treat the parking lots in wintery conditions other than snow, including "freezing rain." (*Id.*; R.R. at 155a). Moreover, Mr. Raymont conceded he was unaware that the policy contained the exclusion, and he did not inform his insurance agents about the snow and ice removal business. (*Id.*; R.R. at 157a-158a).

Here, the exclusion unambiguously rendered the policy inapplicable to "bodily injury" claims arising out of Appellee's "work" of "snow removal operations." When viewing the policy in its entirety, with reference to the specific facts of this case, the term "snow removal operations" encompassed the whole process of snow removal and ice treatment. *See Continental Cas. Co, supra*; *St. Paul Mercury, Ins. Co., supra*. To the extent the court found otherwise, it erred by distorting the meaning of the words in the exclusion. *See Mitsock, supra*. Additionally, regarding Mr. Wilkinson's

amended complaint, his omission of the word "snow" constituted a thinly veiled attempt to avoid the exclusion. *See Erie Ins. Exchange v. Fidler*, 808 A.2d 587, 590 (Pa.Super. 2002) (stating: "If we were to allow the manner in which the complainant frames the request for damages to control the coverage question, we would permit insureds to circumvent exclusions that are clearly part of the policy of insurance").

Based upon the foregoing, the court should have determined that the exclusion was a valid policy provision precluding coverage for all activities associated with snow removal and ice treatment, and Mr. Wilkinson's claims did not trigger a duty on the part of Nationwide to defend or indemnify. Accordingly, we reverse and remand for entry of judgment in favor of Nationwide.

Judgment reversed; case remanded. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2014

- 14 -